STATE of Missouri, Plaintiff/Respondent,

v.

Billy WILLIAMS, Defendant/Appellant.

No. ED 77151.

Missouri Court of Appeals, Eastern District, Division One.

April 3, 2001.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 10, 2001.

Application for Transfer Denied June 26, 2001.

---

Gwenda R. Robinson, Asst. Public Defender, St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Asst. Atty. Gen., Jefferson City, MO, for respondent.

ROBERT G. DOWD, Jr., Presiding Judge.

Billy Williams (Defendant) appeals from the judgment of conviction by a jury for trafficking in the second degree, Section 195.223, RSMo 1994. Defendant appeals arguing the trial court (1) erred in entering judgment and sentence against him because an associate circuit judge lacks jurisdiction to preside over felony trials, (2) plainly erred in retrying Defendant because the retrial was barred by double jeopardy, and (3) plainly erred in failing to, sua sponte, excuse the foreperson for cause because he revealed during jury selection that his experience as an airport police officer might affect his ability to be fair and impartial. We affirm.

Defendant does not challenge the sufficiency of the evidence. The facts viewed in the light most favorable to the verdict follow. Defendant was at the apartment of Vita Hayes. The police received a report that someone was selling drugs from that location and responded to the scene. As the police proceeded up the stairs to the apartment, they encountered Hayes.

Hayes told the police that nothing was going on in her apartment. The police asked if they could enter her apartment and Hayes agreed. Hayes signed a consent to search and let the officers into her apartment.

Officer Kevin Moran entered the apartment and saw two men sitting at the kitchen table. One of the men jumped up and ran toward the bathroom. The other man, Defendant, remained seated at the kitchen table. There was an open window by the table, and Defendant had his right arm outside the window. Officer Moran asked Defendant to stand up. Defendant dropped something outside the window onto the windowsill. Another officer moved Defendant away from the window, and Officer Moran retrieved the brown paper bag that Defendant had dropped. The brown paper bag contained two plastic baggies. The plastic baggies contained off-white chunks that Officer Moran believed to be crack cocaine. Testing revealed that the off-white substance was cocaine base. There were 7.34 grams of cocaine base in the two plastic baggies.

A jury found Defendant guilty of trafficking in the second degree by possessing 6 grams or more of a mixture or substance containing cocaine base in violation of Section 195.223, RSMo 1994.[1] The trial judge sentenced Defendant, as a prior and persistent drug offender, Sections 195.295 and 558.016, to fifteen years' imprisonment. This appeal follows.

In his first point, Defendant contends the trial court erred in entering judgment and sentence against him because the trial judge, as an associate circuit judge, lacked jurisdiction to preside over his felony trial and impose punishment. Defendant did not raise this claim at trial; however, jurisdictional claims may

---

1. All further statutory references are to RSMo 1994 unless otherwise indicated.

be raised for the first time on appeal. *See State v. Parkhurst*, 845 S.W.2d 31, 35 (Mo. banc 1992).

Associate Circuit Judge Angela Turner Quigless of Division 24, the misdemeanor jury trial division of the Twenty Second Judicial Circuit, heard Defendant's case. Defendant asserts that Judge Quigless, as an associate circuit judge, lacked jurisdiction to hear and determine Defendant's felony case, and her determination of his felony case was contrary to Sections 478.240, 541.015, and 546.095 and the local court rules.

In 1979, Article V of the Missouri Constitution, governing Missouri courts, underwent major reform. Section 1 of Article V now states that the judicial power of the state is vested in "a supreme court, a court of appeals consisting of districts as prescribed by law, and circuit courts." [2] The circuit courts include circuit judges and associate circuit judges.[3] Associate circuit judges are designated in Article V, Section 17, to hear and determine "all cases, civil or criminal, and all other matters as now provided by law for magistrate or probate judges and may be assigned such additional cases or class of cases as may be provided by law...."

The question then becomes what additional jurisdiction the legislature has "provided by law" for associate circuit judges. In 1979, Section 478.225 [4] was adopted and

listed the classes of cases that could be assigned to associate circuit judges. Section 478.225 was consistent with the traditional concept of an associate circuit judge as a judge of limited statutory jurisdiction. *See B.C. National Banks v. Potts*, WD57869 slip op. at 5 (Mo.App.W.D. October 31, 2000). In 1989, Section 478.225 was repealed by the General Assembly and at the same time Section 478.220 was amended. Section 478.220, which had previously provided that "circuit court judges may hear and determine all cases and matters within the jurisdiction of their circuit court ....," was amended to provide that "[c]ircuit judges and *associate circuit judges* may hear and determine all cases and matters within the jurisdiction of their circuit courts...." (Emphasis added.) Any difference between the two categories of judges has been abolished by these legislative changes. *State ex rel. Drienik v. Clifford*, 944 S.W.2d 266, 268 (Mo.App. E.D.1997); *See also State ex rel. M.D.K. v. Dolan*, 968 S.W.2d 740, 743 (Mo.App. E.D. 1998) (finding that the statutory changes permit associate circuit judges to hear and determine all cases within the jurisdiction of their circuit).

Section 541.020 provides the jurisdiction of the circuit courts. Section 541.020 states, in part, that "circuit courts shall have exclusive original jurisdiction in all cases of felony, misdemeanor and infractions." Thus, associate circuit judges, as

---

**2.** In his article, "The New Judicial Article: The End of the Yellow Brick Road?," Judge Simeone asserted that one of the main goals of the new judicial article was to provide flexibility in the judicial system so that all the judges in the system "may be utilized to the fullest" and "any judge may be transferred to any court." Simeone, Joseph J., *The New Judicial Article: The End of the Yellow Brick Road?*, 33 J. Mo. B. 10, 13 (January–February 1977). Judge Simeone's article articulated that with the abolishment of all courts except the circuit court, the court of appeals, and the supreme court, a unified court system will

result, designed in part as a practical method for equalizing the judicial work load. *Id.* at 12–13.

**3.** Magistrate courts were abolished in the reform of Article V in 1979. The jurisdiction of the magistrate courts was transferred to the circuit courts and the judges of the magistrate courts became associate circuit judges. Mo. Const. Art. V, Section 27.2.

**4.** See RSMo 1986.

judges of the circuit court, may hear and determine all such cases.

In his argument, Defendant relies on Section 541.015 to assert that associate circuit judges do not have jurisdiction to hear felony cases. Defendant's reliance on Section 541.015, however, is misplaced. Section 541.015, entitled "Jurisdiction of associate circuit judges," provides that, "[a]ssociate circuit judges may hear and determine originally, with circuit judges, coextensive with their respective counties, all cases of misdemeanors and infractions as otherwise provided by law." Section 541.015 allows for cases that associate circuit judges have the authority, concurrent with circuit judges, to hear originally. The use of the term "jurisdiction" in the title of the statute is unfortunate and misleading. *See State ex rel. M.D.K. v. Dolan,* 968 S.W.2d at 743. As previously noted, circuit judges and associate circuit judges may hear and determine all cases and matters, civil and criminal, within their circuit court. Nothing in Section 541.015 deprives an associate circuit judge of the authority granted by Section 478.220 to "hear and determine all cases and matters within the jurisdiction" of his or her circuit court. Further, the language in Section 541.020 providing that "circuit judges may hear and determine originally all cases of felony, misdemeanor and infractions . . . ." does not prohibit associate circuit judges from hearing and determining felony cases. Again, this language gives authority *to circuit judges* to hear these cases

originally, but does not limit the authority of an associate circuit judge as provided in Section 478.220.

■ We note there are three subsections in Section 478.220 labeled as restrictions. The language in subsection 3 of Section 478.220, however, referring to the "transfer, assignment, and disqualification provisions contained in article V of the *constitution, in provisions of law, or in* court rules which are authorized by the constitution or by law" was presumably intended to preserve the traditional procedures related to transfer of cases, assignment by presiding judge, and disqualification. *B.C. National Banks v. Potts,* slip op. at 5. We find no authority that Section 478.220(3) limits the jurisdiction of associate circuit judges by Sections 541.015 or 541.020.[5]

■ In his reply brief, Defendant addresses the procedural assignment issue brought up by the State in its brief. Defendant asserts the assignment of his felony case to Judge Quigless was improper because it came from the criminal assignment judge in Division 16 of the Twenty–Second Judicial Circuit, rather than from the presiding judge of the Twenty–Second Judicial Circuit. While Section 478.240 and local rules 6.10 and 100.1.5 give the presiding judge the authority to assign cases to associate circuit judges, these are procedural guidelines that do not affect the subject matter jurisdiction of associate circuit judges.[6] While Defendant failed to

**5.** Defendant also cites a violation of Section 546.095. Section 546.095 provides, "[i]f, in the progress of any trial before an associate circuit judge, it shall appear that the accused ought to be put upon his trial for an offense not cognizable before an associate circuit judge, the judge shall immediately stop all further proceedings before him, and shall transfer the case to a circuit judge." However, we have already established that associate circuit judges may hear and determine felony

cases, and thus, such is cognizable before an associate circuit judge. Defendant's reliance on Section 546.095 is erroneous.

**6.** Section 478.240.3 states:

If any circuit judge or associate circuit judge shall proceed to hear and determine any case or class of cases which has not been assigned to him by the presiding judge pursuant to subsection 1 or 2 of this section, . . . or

object to jurisdiction, he also failed to object to the trial court's failure to follow the assignment procedures. Unlike jurisdiction, one must object to procedural errors or the objection is deemed to have been waived. *B.C. National Banks,* slip op. at 5. Defendant's failure to raise such a timely objection acts as a waiver of that objection.[7]

Associate circuit judges have jurisdiction to hear and determine all cases that arise in the circuit court, including felony cases. Judge Quigless had authority to hear Defendant's felony case and impose sentence. Point denied.

■ In his second point, Defendant argues the trial court plainly erred in retrying him because the retrial was barred by double jeopardy. The day before Defendant's trial that resulted in his conviction, the trial court declared a mistrial after defense counsel, during cross-examination, asked a witness whether he recalled "testifying on this same matter before another jury in a case that ended in a mistrial." Defendant argues he did not give his express or implied consent to the mistrial, and there was no manifest necessity for declaration of a mistrial. Because Defendant did not object at trial, Defendant requests plain error review.

■ Plain error review is to be used sparingly and may not be used to justify a review of every point that has not been preserved for appellate review. *State v.*

*Bolds,* 11 S.W.3d 633, 638 (Mo.App. E.D. 1999). Plain error is an error that facially establishes substantial grounds for believing that it has resulted in a manifest injustice or miscarriage of justice. *State v. Brown,* 902 S.W.2d 278, 284 (Mo. banc 1995). A claim of double jeopardy is a personal privilege that is waived if not raised at the proper time. *State v. Dunn,* 7 S.W.3d 427, 430 (Mo.App. W.D.1999) .[8] Here, Defendant failed to object at the proper time, and thus, Defendant has not presented us with plain error. Point denied.

■ In his final point, Defendant asserts the trial court plainly erred in failing to, sua sponte, excuse venireperson Williams for cause because he revealed that his experience as an airport police officer might affect his ability to be fair and impartial. Because Defendant did not request that venireperson Williams be removed, or object to his presence on the jury, Defendant requests plain error review.

■ A defendant is entitled to plain error review if the defendant demonstrates that manifest injustice or a miscarriage of justice will occur unless the error is not corrected. *Bolds,* 11 S.W.3d at 638. We reiterate that plain error review is to be used sparingly and may not be used to justify a review of every point that has not been preserved for appellate review. *Id.*

in the event the purported assignment to him shall be determined to be defective or deficient in any manner, any judgment he may have entered may be set aside, as otherwise provided by rule or law, and the judge ... shall not be deemed to have acted other than as a judicial officer because of any such absence, defect or deficiency of assignment under this section....

7. The State's motion to file a supplemental legal file or in the alternate to strike Defen-

dant's reply brief taken with the case is denied as moot.

8. The exception noted in *State v. Elliott,* 987 S.W.2d 418, 421 (Mo.App. W.D.1999), that plain error is proper to determine double jeopardy challenges "in any case in which we can determine from the face of the record that the court had no power to enter the conviction," is not present in this case.

The trial court has broad discretion in determining the qualifications of prospective jurors because it is in the best position to evaluate venirepersons' responses. *Id.* at 640. The trial court's decision will not be disturbed unless it is clearly against the evidence and constitutes a clear abuse of discretion. *Id.* Venirepersons may be excluded only where it appears that their views would prevent or substantially impair the performance of their duties as jurors in accordance with the instructions and their oath. *State v. Jones,* 979 S.W.2d 171, 184 (Mo. banc 1998). Whether a venireperson is qualified to serve on a jury is determined from the entire examination. *State v. Jones,* 854 S.W.2d 60, 63 (Mo.App. E.D.1993).

In the present case, venireperson Williams indicated during voir dire that he was an airport police officer and that experience could possibly affect his ability to hear testimony in Defendant's case. He responded during further examination that he could weigh the evidence as a citizen, but that as a police officer he had "kind of like inside information that would lead [him] to believe one way or possibly the other." Venireperson Williams, however, also unequivocally stated that he would be fair and impartial. Defendant did not demonstrate that venireperson Williams' background as an airport police officer would prevent or substantially impair him from performing his duties as a juror. Thus, the trial court did not plainly err in failing to, sua sponte, excuse venireperson Williams. Point denied.

The judgment of the trial court is affirmed.

MARY RHODES RUSSELL, J., and RICHARD B. TEITELMAN, J., concur.